All right, Mr. Wersch, we'll hear from you first. Good morning, your honors, and may it please the court. In qualified immunity cases, the court is supposed to look at the totality of the circumstances, and normally that is a actions by pointing to the what was going on in the entire situation. In this case, it's Mr. Laney that once urges the court to look at the totality of the circumstances and notes that the district court did not, it completely ignored the evidence that was put forward about what Detective or Lieutenant Boyer was doing just prior to the pepper spraying of him on the day of the incident, and that was basically going on a rampage. Pepper spraying a number of people, as we allege in the prior case, one of them was Ms. Drace, and within seconds of this incident, for no reason, no justification, and the district court failed to address that at all. She doesn't mention Drace, she doesn't mention anything that happened prior to that. She looks solely on the few seconds of this incident, but those are inextricably intertwined in the Lieutenant Boyer's motivations were. Although you could have a situation where you have improper uses of pepper spray elsewhere, and a completely proper use of a pepper spray based on a completely different state of mind or whatever, objectively reasonable in another. We agree, but that's for a jury to decide. In this particular instance, we're looking at his motivation, we're looking at whether he was retaliating against protesters for being protesters, for protesting police activity, and I Well, let me ask you this. I'm just gonna, I'm not sure you're right about that, that it necessarily needs to go to a jury. Suppose that there was an indiscriminate use of pepper spray, and then, and I know this isn't these facts, but then you see you see Ms. Laney beating an officer. The officer's on the ground and beating an officer, and he goes up and pepper sprays the protester who's beating the officer. Obviously, you would not be making the same argument that, oh yeah, we need to let this go to a jury, because ten minutes earlier, he Obviously, but in this particular case, on these facts, I think that that, his actions just prior to do inform what he was doing and what he did to Mr. Laney. Your argument is more that this is a close enough call that the earlier behavior is probative. Yes, and that's part of that pattern, because it's showing his retaliatory motive and what he is doing to the various protesters that he's encountering. Now, one thing, one of the things we have here on that I know we have video evidence of the other case, but it's not video evidence of the actual spraying in the other case. And here, I don't think there's any dispute that there is a grabbing of the bike, at least from the video evidence, or that, am I wrong about that? Respectfully, yes, your honor. Okay. What Mr. Laney testified to, what's in the record, is that Sergeant Marks, at some point, pushed his bike into Mr. Laney to push him back. That there was solely a use of force by Sergeant Marks against Mr. Laney, that he did not grab the bike, he did not do that, and I don't think the video... And the video doesn't show to the contrary? I don't believe so. I believe you can see, like the hands go up, but, I mean, that would be a natural reflex if someone is shoving a bike into you. But there's no, I don't see any evidence of the video where you actually see him grabbing the bike or tussling with the bike. I don't think that's, that's not in the video. Okay. But isn't the relevant question what a reasonable officer in Boyer's position would have perceived from that image, not what really happened? Well, there's two problems with that particular issue in the judge's findings, and first is whether or not Officer Boyer, Lieutenant Boyer saw that. Because if you look at the video evidence, and we put a still in the brief, that shows that at the exact moment that Sergeant Marks is pushing the bike into Mr. Laney, Lieutenant Boyer is looking in the complete opposite direction. And so it's likely he didn't even see it, and that's also consistent with his testimony. Because in his testimony, he tells a story that the videos disprove. His testimony during the deposition, which we highlight in the evidence, is that in the immediate six seconds before he pepper-sprayed him, Mr. Laney was still with the bike. And that's just untrue, and it's proven by the video. And faced with that at the deposition, he stuck with it, and he just said, well, I don't think the video shows the whole thing. I don't think it shows what happened. So I think looking at all of the conflicting evidence of his testimony, looking at the video evidence which shows him looking away, it's not clear that he actually saw that. In addition, I mean, if Mr. Laney is to be believed by the jury that Sergeant Marks just pushed a bike into him, that's not an altercation. I mean, that's assault by an officer. And if Lieutenant Boyer then decides that he can also assault Mr. Laney because he sees the sergeant assaulting Mr. Laney, that doesn't give him an excuse to be let off to do that. So I think the judge here, the district court, made factual findings that are not supported by the record, that are at least controverted by the record, and that really need to go to a jury. The other issue I think was touched on in the last argument is that Mr. Laney was engaged in protected activity. He was at a police protest in order to protest police behavior. I think the district court below in its First Amendment retaliation analysis focused on a too narrow of an issue regarding the protected speech at issue here. And the district court said that focused only on the moment when Mr. Laney went up to the officer and expressed his displeasure at the rough handling of the women who were protecting the bikes. But that ignores the fact that he was generally there protesting police behavior. In addition, it ignores the video evidence that shows him as he's backing up with his hands, continuing to talk to the officer and express his First Amendment rights. But I think that's also why what Lieutenant Boyer is doing prior to the incident is instructive to it. Because Lieutenant Boyer is engaged in punishing protesters, and just for being protesters. Not because of something particularly they said, not for some specific issue. He's just pepper-spraying protesters. Like Mr. Price said, he's had enough and he's lost it. And I think that is all for a jury to decide here. And the judge stepped into the jury's role and made factual determinations that are controversial. Is there any dispute here on the, my understanding, again we've got the video although it wouldn't tell us this, is there any real dispute about the fact that Officer Boyer didn't hear the complaints that were made by Mr. Laney about the rough handling of women protesters? I think the video disputes that because, as I said, when you see Lieutenant Boyer approaching Mr. Laney, Mr. Laney is still talking to the officer. He didn't hear the initial complaint, but as he's backing away, he's still talking, engaging with the freedom of speech to protest their activity. And he was just saying his name. Can't you hear that on the video? Well, I mean, I think they're, I honestly, I don't. I didn't hear that. But I still believe he's, by looking at him, by going back and that he's still engaged in protest activity, it's not just whether or not he heard that specific thing. You know, he, this is Lieutenant Boyer going through and punishing people just for being there. No, I get that. The protest issue is different. I think you're right, there might be two issues here. One with the protest, but I was just worried, I was worried about that particular statement. I just didn't think there was much dispute about that particular statement, the initial one. The particular complaints in the initial one, no, I don't think he could have heard it because he's a block away. That's what I thought. But I believe he's still saying things to the officer and still engaged in protective activity while he's getting pepper sprayed. I will reserve the rest of my time. You may. That's a lot of time for a question. Ms. Duncan, you're up again. You'd rather be in Europe, probably. Yes, I would be. Good morning, I may please the court again. Qualified immunity protects all but the plainly incompetent or those who knowingly violate the law. It gives government officials breathing room to make reasonable but mistaken judgments. Officials are not liable for guesses in gray areas. They are liable for transgressing bright lines. The lower court correctly held that under the facts of this case, Defendant Boyer was entitled to qualified immunity when, after observing plaintiff in a physical struggle with a fellow officer, Boyer pepper-sprayed plaintiff at a violent and chaotic protest in September 2017. The district court's order in this matter should be upheld because one, Defendant Boyer's force was reasonable under the totality of the circumstances. Two, Defendant Boyer's force did not violate plaintiff's First Amendment rights because there's no evidence that Boyer was aware of any First Amendment action by plaintiff. And three, the Monell claim against city must be dismissed as there's no underlying constitutional violation by Boyer and plaintiff has failed to show any unconstitutional city custom or policy. So first, Defendant Boyer's entitled to qualified immunity on plaintiff's Fourth Amendment claims. In an analysis of qualified immunity, the court analyzes whether the officer violated the law and whether it was clearly established and thereby beyond debate that the officer could not do what he did under the circumstances. Qualified immunity is a legal question. It is not a question for the jury. It is for the court to decide. Under the circumstances at hand and from the viewpoint of a reasonable officer at the scene, Boyer did not violate the law by pepper spraying plaintiff. The circumstances at hand, as we've discussed, were violent and chaotic. There were rocks and there were things being thrown at officers. There was a bus window that was busted out. The bike team was called in to free that bus. Is that taking the facts and the like most favorable to the plaintiff? My understanding was that about the window breaking and at the officers that anything other than water bottles was disputed. But maybe I'm wrong. I believe that they do dispute that particular issue, although I don't believe that there's any evidence for which they support that dispute, if that makes sense. It is undisputed that that is what an officer saw. On their way to the crowd, the bike team attempts to wedge people away from the bus. Plaintiff goes around the obviously forming line of the bike officers and he's met by Sergeant Marks, who's holding his bike out in front of him to back up the plaintiff. There is a physical altercation that occurs in the record at 156-6 at timestamp 1-2205. This lasts about five seconds long. Boyers sees the altercation and he goes to that area. Boyers then deploys a short burst of pepper spray to assist Sergeant Marks in his struggle with the plaintiff. A reasonable officer under this circumstance, knowing what Boyer knew, would believe that the force was Boyer sees plaintiff's physical interaction with Sergeant Marks and his pepper spraying of the plaintiff that the physical altercation was over, but plaintiff had not disengaged from Sergeant Marks. It's not until Boyer was pepper sprayed that plaintiff ceases to engage and the BRT is able to form a line to get the buses out. So even if the court thinks that the force that Boyer used was unreasonable because plaintiff was not engaged in a physical altercation with Marks at the time of the spray, qualified immunity does cover mistakes as we've discussed. Moreover, it's not clearly established that Boyer's actions violated the law. Plaintiff cites no authority which would indicate beyond debate that Boyer was not allowed to use force under the circumstances described here. There's no authority which fits squarely to the facts at hand as it must  of qualified immunity within the Fourth Amendment context is and has always been an individualized case-by-case analysis of the officer conduct under the particularized circumstances presented. The analysis is not and has never been a deep dive into the officer himself as plaintiff encourages this court to do here. Plaintiff points to no authority that would warrant this. Instead, and it's you to find that defendant Boyer was out of control and on some kind of rampage in that that is part of their argument of what the district court did so wrong here was to make credibility determinations. Yet that's exactly what they're asking this court to do here. And for these reasons, Boyer's entitled to qualified immunity on plaintiff's Fourth Amendment claims. Boyer is also entitled to qualified immunity on plaintiff's First Amendment claims. Plaintiff has Boyer's spray was motivated in any way by plaintiff's actions under the First Amendment. Again, Boyer was surrounded by protesters that day. There were hundreds of people there. If there were animus by defendant Boyer of First Amendment, there would have been a wide-scale use of force that he would have used against people. But yet, plaintiffs themselves only point to five or six specific incidences that are at issue. There's no evidence that... You don't think the evidence supports a rampage inference? I don't. There were five or six sprays around the time of this spray? There were five or six sprays of Lieutenant Boyer that day. But I mean how close in time were they to the Laney incident? So the Dreef incident was short in time and the other incidences were some time later, is based on my recollection. I mean within 15 minutes? Within an hour? Do you know? I don't know off the top of my head, Your Honor. I apologize. But I believe it's... If I'm remembering correctly, I believe it would be within the course of several hours. This day of protests extended the entire day. The verdict came out at about nine o'clock in the morning. The protests took place in front of City Hall well into the early afternoon, late afternoon. And then they continued on with their protests at the Central West End where there was a lot of property destruction and riotous behavior. And so even with all of that, the plaintiffs only point to five or six people who were sprayed by Defendant Boyer. There's no evidence in the record that Defendant Boyer witnessed any First Amendment activity by plaintiff before he saw the physical altercation. The only evidence of Defendant Boyer's motivation for the spray was the physical altercation. And that is undisputed. What about the participation in the protest itself? I mean there's no dispute that he was a protester. Well there's no dispute that he was at a protest. And so I don't think that within and of itself. Again, within the context of this being a protest in which there are multiple people there and hundreds of people there, the fact that he's merely at a protest would not be the source of animus that it would towards anyone else, if that makes sense. What I'm trying to... The thing, I think the argument would be, and it's maybe that he, you know, he was upset that day that there were people protesting and therefore he went around and he sprayed, you know, five or six people. And participating in a protest, at least a nonviolent protest, I think is well settled that it's a First Amendment activity. Right. But there's no indication that that Boyer knew that he was a participant as opposed to an onlooker or someone who just happened to be there that day. What Boyer, from his perspective, what Boyer saw was that he was engaged in a physical altercation. And that's that's all he saw before he went to aid Sergeant Marks in his struggle with Laney. In contrary to the plaintiff's view, the district court did not take Boyer just at his word. He And it's well established that instead of blindly accepting the non-moving party's version of the facts, a court may rely on video evidence found in the record. The lower court accurately did so there in this case, and therefore Boyer is entitled to qualified immunity on the First Amendment claim. Third and finally, the Minnell claim against city must fail as Boyer committed no constitutional violation and plaintiff has failed to show any constitutional city policy or custom. It's well settled that there is no constitutional, that where there is no constitutional violation rather, that a Minnell claim cannot stand. We find that in Mitchell v. Dakota City Social Services. So if this court were to uphold the district court's finding of granting qualified immunity, then there's no need to go further into the Minnell claim. But should the court decide differently than the in this case, then the Minnell claim still fails because there's no evidence that the city failed to train or supervise its officers. The bike squad is really what's at issue here. The bike squad was created and formed as part of SLMPD's constantly evolving response to large-scale protest. It was brought in to be a softer hand with protesters. As to crowd management, they did week-long training before the creation of the bike squad. They've done training since and that conveys that the city has not been deliberately indifferent in its training of those bike officers. And finally, as the district court explained, a Templeton agreement is not really applicable here. It allowed for force in response to, well Templeton did not apply for force in response to violent situations and it specifically said that dispersal of crowds based on First Amendment activity alone without any kind of violence associated with it would be improper. Boyer didn't disperse a crowd and therefore for those reasons the court should uphold the district court's dismissal of plaintiff's Minnell claim against city. A quick note on supplemental jurisdiction, they make a claim of that in their opening brief that the court shouldn't have exercised or should have rather exercised supplemental jurisdiction. It refused to do so inappropriately is their argument. That's a discretionary matter. It's rarely overturned by this court and the district court depicts various reasons of comedy, fairness, and convenience as to why it did not do so and that should not be disturbed on appeal. So in conclusion, defendants respectfully request this court affirm the district court order. Thank you. Very well, thank you for your argument. Ms. Duncan, Mr. Wersh. Thank you, your honors. You may proceed with rebuttal. May it please the court again. All of the argument by the city is premised on this idea that Lieutenant Boyer saw the altercation. And as we've repeatedly said, the video evidence, his own testimony undermine that and present at least a controverted fact on that very issue. And under the standard of review, taking things in light most favorable to the plaintiff, looking at the video evidence, looking at his testimony, the evidence is not uncontroverted that Boyer even saw the altercation at all. The answer is no. He did not see it. You can see that in the video. He was not able to see it. And that is for a jury to decide whether or not that was part of his motivation to do it. There's a certain, the city mentioned a certain irony, I mean there's a certain irony that the city keeps calling this violent and chaotic and referring to stuff that happened two blocks away where the buses are to influence what happened, you know, with Ms. Drath and then Mr. Laney. Again, the evidence is not that rocks were being thrown or anything like that. There was a bottle. You can see one bottle in the video, AB2. And there is this statement by one officer that a is that there's no other corroboration for that. No other officers testified to that. There's no photographs of it. You can't see it in the video. But the issue, the other thing is, if you actually look at all the videos, it's not violent and chaotic. Most people are standing around. Most people are just milling about at that point. You know, you see the gap, you know, if you look at all the videos together, look at the composite, you'll see that there's a huge gap for people just standing around. The only thing that's causing any chaos are the BRT officers who are going in to get the people off the bus. But for the most part, it's a very calm and peaceful situation going on there. I did want to address the court's question about the five to six incidents, the rampage. Lieutenant Boyer, in his deposition testimony, he's the one who said he pepper-sprayed five to six people at the point where Ms. Drath is. It's not hours later, it's within a minute, maybe two at the most. That he pepper-sprayed five or six different people at that intersection where Ms. Drath was one of them. And that's the only person he was able to identify. We also had evidence that he did this later on in the protest, that he started going around indiscriminately pepper-spraying other people at the protest. So the we're not asking the court to make a credibility determination, we're just asking the court to find that there's controverted evidence. And that a jury is the one who has to decide the incident. And again, the First Amendment issue is that they were at a protest. And you do know that the city just said that there were hundreds of people and there was only evidence of five or six people who were pepper-sprayed. Lieutenant Boyer is the only one doing that. There are also hundreds of officers at the scene. And yet there's one particular officer who's taken it upon himself to punish protesters. And I don't know the motivation. I don't know why he would do it. But we have two different people who committed no pepper spray, in Mr. Laney's case, in the face as well as Ms. Drath. He was on a rampage. He was behaving abnormally. And he was using force against people for no reason, including Mr. Laney. And that is a controverted fact. And we do believe that the court improperly made determinations that are heavily in dispute. And we ask this court to send us back for a trial. Any other questions? Very well. Thank you for your argument, Mr. Wersch. The case is submitted. The court will file a decision in due course.